UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR CONSTITUTIONAL
INTEGRITY,

        *Plaintiff*,

  v.

THE CENSUS BUREAU, et al.,

        *Defendants*.

Civil Action No. 1:21-cv-03045

**MEMORANDUM OPINION**

Before: WALKER and PAN, *Circuit Judges*, NICHOLS, *District Judge*.

Opinion of the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit* Judge: Every ten years, the government conducts a census to count the number of people living in the United States. U.S. Const. art. I, § 2; 13 U.S.C. § 141. The census helps determine the number of United States Representatives in each state. *Congressional Apportionment*, United States Census Bureau, https://www.census.gov/topics/public-sector/congressional-apportionment.html. The more populous a state is in comparison to other states, the more representatives it receives. That process is called apportionment. *Id.*

Citizens for Constitutional Integrity says that in 2020, the Census Bureau failed to follow Section Two of the Fourteenth Amendment, which requires a state's population to be reduced for apportionment purposes when it abridges the voting rights of its citizens. Second Am. Compl. ₱₱ 60-62.

1

We cannot reach the merits of that claim because the "judicial Power" of the United States extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. That means that a party seeking relief from a federal court must show that it was injured by the defendant and that an order from this court would redress its injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2015). Here, Citizens for Constitutional Integrity has failed to show that it was injured by the Census Bureau's alleged failure to follow Section Two of the Fourteenth Amendment.

True, Citizens's members reside in states, like New York and Pennsylvania, that lost representation in Congress after the 2020 census. *See* U.S. Census Bureau, 2020 Census Apportionment Results Presentation (April 26, 2021), 8. But Citizens failed to show that the loss in representation was caused by the Census Bureau's alleged failure to follow the Fourteenth Amendment. So we must dismiss this case for lack of jurisdiction.

# I

## A

After the Civil War, the Thirteenth, Fourteenth, and Fifteenth Amendments reshaped our Constitution to abolish slavery and extend rights to those formerly enslaved. One such right is the right to be included as a person for apportionment purposes. U.S. Const. amend. XIV, § 2. Another is the right to vote. *Id.* amend. XV. To ensure that southern states could not deny freed slaves the right to vote while also claiming them as residents for apportionment purposes, the nation ratified Section Two of the Fourteenth Amendment. *See* Second Am. Compl. ¶¶ 29-33. Its original text reads:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being

> twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2.[1]

Section Two has two clauses. The first clause says a state will be apportioned representatives in the House of Representatives based on the "whole number of persons" in that state. *Id.* The second clause, known as the Reduction Clause, imposes a penalty on states that deny or abridge the right to vote for any reason other than age, citizenship, participation in a rebellion, or the commission of another crime. When a state does so, the Clause requires the state's "basis of representation" to be "reduced" by the proportion of eligible voters who are wrongfully disenfranchised. *Id.*

Here's how it works. Imagine a state with 100 people, 80 of whom are citizens old enough to vote. The state wrongfully abridges the right to vote of 8 people, or 10% of eligible voters. Under the Reduction Clause, the State's basis of representation (100 people) should be reduced by 10%. When it comes time to apportion representatives to our hypothetical state, only 90 out of its 100 people will count. *Cf.* Ethan Herenstein & Yurij Rudensky, *The Penalty Clause and the Fourteenth Amendment's Consistency on Universal Representation*, 96 N.Y.U. L. Rev. 1021, 1040-41 (2021).

## B

Citizens for Constitutional Integrity is a nonprofit organization with members in New York, Pennsylvania, and Virginia. Second Am. Compl. ¶¶ 14-15. It alleges that the Census

---

[1] "Needless to say, the reference in this provision to 'male inhabitants . . . being twenty-one years of age' has been superseded by the Nineteenth and Twenty-sixth Amendments." *Evenwel v. Abbott*, 578 U.S. 54, 102 n.7 (2016) (Alito, J., concurring in the judgment).

3

Bureau is charged with implementing the Reduction Clause. It points out that, after completing the census, the Bureau prepares a report for the President with "[t]he tabulation of total population by States." *Id.* ¶ 24 (quoting 13 U.S.C. § 141(b)). Based on that report, the President sends a statement to Congress "that describes the results of the census and the distribution of Representative seats." *Id.*; *see also* 2 U.S.C. § 2a.

Citizens believes that some states' voter-ID and voter-registration requirements abridge the right to vote. *Id.* ¶¶ 43-46, 50-53. It thus claims that the Census Bureau failed to implement the Reduction Clause by refusing to account for those abridgments when it prepared its report for the President. *Id.* ¶ 66.

As a first step, Citizens sent a letter to the Census Bureau raising its concerns about the 2020 census. *See id.* ¶ 42; ECF No. 1-2 (Bureau response). The Bureau replied that it did "not have the authority to investigate whether states have violated voting rights laws." ECF No. 1-2. So Citizens filed this lawsuit asking the court to set aside the 2020 apportionment and issue an injunction requiring the Bureau to implement the Reduction Clause. Second Am. Compl. ¶ 69. The Court granted Citizens's request that the case be assigned to a three-judge panel under the Voting Rights Act. *See* Minute Order, Dec. 13, 2021; 28 U.S.C. § 2284(a).

The Bureau moved to dismiss Citizens's suit. The Bureau argued that Citizens has not shown that its members were injured by the Bureau's failure to implement the Clause, so it does not have standing to sue in federal court. Defs.' Mem. in Supp. of Mot. Dismiss 7-8.

By contrast, Citizens asserts that if the Bureau had properly implemented the Clause, New York, Pennsylvania, or Virginia would have been allocated an additional representative after the 2020 census. Second Am. Compl. ¶¶ 48, 54-58. Thus, Citizens alleges that the Bureau's failure

4

to implement the Clause harmed at least some of its members by diluting their voting power. *Id.* ¶ 15.

## II

### A

To bring a lawsuit in federal court, a plaintiff must show that it has standing to sue. U.S. Const. art. III; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To do so, a plaintiff must show three things: (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. An organization (like Citizens) cannot sue on behalf of its members if none of its members would have standing to sue as an individual. *Warth v. Seldin*, 422 U.S. 490, 516 (1975). When determining whether a plaintiff has standing at the motion to dismiss stage, we accept the plaintiff's factual allegations as true, and we "may consider materials outside the pleadings." *Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

Citizens alleges only one kind of injury: dilution of the voting power of its members. Pl's Opp. to Defs.' Mot. Dismiss 17. It says that the Bureau's failure to apply the Reduction Clause caused at least some of its members to have fewer representatives in their respective states. *Id.*

Vote dilution is an injury sufficient to satisfy the first element of standing. *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331 (1999). And the 2020 apportionment *did* decrease the number of representatives in two states in which Citizens's members reside — both New York and Pennsylvania have one fewer representative than they did under the previous apportionment in 2010. Oral Arg. Tr. 4.

But to show standing, it is not enough for a plaintiff to merely allege vote dilution. It must also show that the dilution is "traceable to the challenged conduct of the defendant." *Spokeo*, 578

U.S. at 338. In other words, to have standing in this context, plaintiffs alleging vote dilution injuries must show that their states would have had an additional representative but for the government's error. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992).

That cannot be done merely by pointing out the government's alleged failure to follow the Reduction Clause. Representatives are distributed according to a complicated mathematical formula, prescribed by statute, and states might lose representatives for reasons unrelated to the Bureau's failure. *See* 2 U.S.C. § 2a(a) (requiring "the method of equal proportions"); *Computing Apportionment*, United States Census Bureau, https://www.census.gov/topics/public-sector/congressional-apportionment/about/computing.html. So even if a plaintiff can show that the Census Bureau counted incorrectly, that does not mean that a corrected recount would lead to an apportionment more favorable to the plaintiff.

In *Franklin v. Massachusetts*, for example, it was not enough for the plaintiffs to allege that the Census Bureau used inaccurate data; they had to *show* "that Massachusetts would have had an additional Representative if the allocation had been done using some other source of 'more accurate' data." 505 U.S. at 802.[2] And in *Utah v. Evans*, the Court held that Utah had standing to challenge the Bureau's use of a certain statistical counting method because Utah could show that it would have had an additional representative if the method had not been applied. 536 U.S. 452, 458, 460-61 (2002).

Here, Citizens fails to show that any of the states in which its members reside would have had an additional representative if the Reduction Clause had been applied according to its legal theory. Thus, it does not show that the Bureau's failure to implement the Clause caused its injury.

---

[2] Though that part of the standing analysis appeared in a plurality opinion, the concurrences did not challenge the plurality's conclusion that the plaintiffs lacked standing to pursue their claims about the accuracy of the data.

**B**

Start with Citizens's legal theory, which we accept as true when asking whether it has standing. *American Federation of Government Employees, AFL-CIO v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982). Citizens believes that states are unlawfully abridging the right to vote in two ways — first, by requiring voters to register before voting; and second, by requiring voters to present identification at polling places. Second Am. Compl. ¶¶ 43-54. Citizens argues that those who could not vote due to voter-ID or voter-registration requirements must be deducted from a state's "basis of representation" according to the Reduction Clause. *Id.* ¶¶ 60-62; *see also* Pl's P. & A. in Supp. of Renewed Summ. J. 36.

To show that New York, Virginia, or Pennsylvania would have gained a seat if the Reduction Clause were applied according to its legal theory, Citizens offered a declaration by a data scientist. That declaration provided three apportionment "scenarios" that purported to demonstrate what apportionment would look like if the Bureau had accounted for state voter-registration requirements and voter-ID laws.

- Scenario 1: what apportionment would look like if the Bureau had accounted for voter-registration requirements and applied the Reduction Clause accordingly, Sharma Decl., ECF No. 20-3 ¶¶ 14, 21;

- Scenario 2: what apportionment would look like if the Bureau had accounted for Wisconsin's voter-ID law and applied the Reduction Clause accordingly, *id.* ¶¶ 15, 23;

- Scenario 3: what apportionment would look like if the Bureau had accounted for *both* voter-registration requirements and Wisconsin's voter-ID law and applied the Reduction Clause accordingly, *id.* ¶¶ 16, 26.

Each scenario produces an apportionment that is better for one of Citizens's member states than the actual apportionment that occurred. *See id.* ¶¶ 21, 23, 26. However, even when we accept the resulting apportionments in each scenario as true, the declaration tells an incomplete story.

Most glaringly, the declaration does not even attempt to approximate the number of citizens in each state who have been disenfranchised by voter-ID requirements. Instead, the declaration investigates the effect of voter-ID requirements in just one state: Wisconsin. *See id.* ¶ 12. In two of its apportionment scenarios, the declaration shows us what apportionment would look like if the Bureau reduced Wisconsin's basis of representation because of its voter-ID law. *Id.* ¶¶ 15-16. But the declaration never provides a scenario that shows us what apportionment would look like if the basis of representation were reduced in *each* state with a similar law.

That is a significant mistake. If Citizens is right that voter-ID laws disenfranchise voters in a way that triggers the Reduction Clause, then the Clause would reduce the basis of representation in *all* states with those laws. Neither the declaration nor the complaint asserts that Wisconsin is the only state with such a requirement. In fact, the complaint briefly compares and contrasts different ID requirements in different states, admitting that Wisconsin is not alone. Second Am. Compl. ¶ 50. By taking only Wisconsin into account, the declaration fails to provide us with a scenario that illustrates what apportionment might look like if Citizens's legal theory is correct.

When the Bureau pointed out that error, Citizens responded that it is "master[ ] of [its] complaint" and may focus solely on Wisconsin's voter-ID law if it wishes. Pl's Opp. to Defs.' Mot. Dismiss 27-28. Fair enough — that is Citizens's choice. But if Citizens wants to be master of a *viable* complaint, it needs to do more. Without knowing how voter-ID laws in other states might affect the basis of representation in those states, it is impossible for us to know how

8

representatives might be apportioned if Citizens's legal theory is correct. *See* 2 U.S.C. § 2a (apportioning pursuant to a formula that accounts for the relative populations in each state).

Indeed, it might be that Citizens's voter-ID theory would *reduce* the "basis of representation" for some of Citizens's member states (Pennsylvania, New York, and Virginia). Given the lack of detail in Citizens's complaint, we do not know whether such a reduction would occur, or how it would affect the number of representatives apportioned to those states. In fact, at oral argument, Citizens admitted as much. Oral Arg. Tr. 4 ("Conceivably, it is possible that when the Census Bureau complies with Fourteenth Amendment, Section 2, and decides where to move all of the seats, there is some possibility that New York could lose a seat.").

We don't doubt that it would be difficult and expensive for Citizens to show that the Bureau's failure to apply the Reduction Clause diluted the voting power of its members. Citizens would need to collect the data necessary to show what apportionment might look like if its legal theory is correct. But a plaintiff is not absolved from its duty to show a traceable injury just because it is hard to do so. *See Sharrow v. Brown*, 447 F.2d 94, 97 (2d Cir. 1971) (A plaintiff's "sincere effort . . . to rectify what he considers a grave constitutional mistake is not enough. He must establish that the failure to enforce [Section Two of the Fourteenth Amendment] has resulted in a detriment to his rights of representation in Congress.").

In sum, we have no way of knowing if the Bureau's failure to apply the Reduction Clause, in accordance with Citizens's legal theory, led to fewer representatives in Pennsylvania, New York, or Virginia. So Citizens has not shown standing.

C

As a fallback, Citizens argues that it was denied a procedural right and so does not need to show what apportionment would look like under its legal theory. Pl's Opp. To Defs.' Mot. Dismiss 15.

True, "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). In procedural-rights cases, courts thus soften standing's traceability and redressability requirements. *National Parks Conservation Association v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005). A litigant claiming the loss of a procedural right need not prove that the loss of the right was a but-for cause of his injury or that his injury would be cured if the proper procedure is followed. *Id.* He need show only that he was denied a procedure to which he was entitled and that he was harmed by a decision made without that procedure. *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n. 7 (1992). If he makes that showing, he has standing so long as there is "some possibility" that the proper procedure would lead to a more favorable decision. *Massachusetts v. EPA*, 549 U.S. at 518.

Citizens argues the Bureau's failure to apply the Reduction Clause was a "flawed procedure." Pl's Opp. to Defs.' Mot. Dismiss 15. It then points out that the resulting apportionment figures caused New York and Pennsylvania to lose one seat in the House of Representatives. Oral Arg. Tr. 4. Thus, Citizens says it has standing so long as there is "'some possibility'" that apportionment would be more favorable had the Reduction Clause been followed. Pl's Opp. to Defs.' Mot. Dismiss 20 (quoting *Massachusetts v. EPA*, 549 U.S. at 518).

10

But relaxed standing principles do not apply every time a plaintiff alleges that the government failed to follow proper procedures. They apply only when "the procedure at issue" is "one designed to protect a threatened interest of the plaintiff." *Renal Physicians Association v. U.S. Department of Health and Human Services*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). Such procedures are usually found in statutory provisions that give private parties a right to participate in a government process. For example, the Supreme Court held that the Clean Air Act gave Massachusetts a "procedural right to challenge the [EPA's] rejection of its rulemaking petition." *Massachusetts v. EPA*, 549 U.S. at 520 (citing 42 U.S.C. § 7607(b)(1)). Similarly, some statutes give "concerned public and private organizations" the right to "cooperat[e]" with an agency in preparing impact statements. *See, e.g.*, 42 U.S.C. §§ 4331, 4332; *Manson*, 414 F.3d at 5 ("[T]he archetypal procedural injury[ ] [is] an agency's failure to prepare a statutorily required environmental impact statement.").

The Reduction Clause does not accord to Citizens a right to participate in a government process. It does not, for example, give Citizens a procedural right to challenge the apportionment of United States Representatives. *Cf. Massachusetts v. EPA*, 549 U.S. at 520. Nor does it require the government to collaborate with Citizens. *Cf.* 42 U.S.C. § 4331. Nor does it provide Citizens with any opportunity to comment on the census or the resulting apportionment. *Cf. Summers v. Earth Island Institute*, 555 U.S. 488, 496-97 (2009) (characterizing an agency's denial of the "guaranteed right to comment" as a "deprivation of a procedural right"). Rather, it imposes a nondiscretionary obligation on the government, with no input by private parties.

In short, Citizens has not been *deprived* of a procedural right for the simple reason that it was never *entitled* to a procedure. So it must show the typical elements of standing, including a traceable injury. But for the reasons explained above, it has failed to do so.

\*   \*   \*

Citizens does not show that the Census Bureau's failure to implement the Reduction Clause caused an injury to Citizens and its members. Thus, Citizens fails to show standing, and we must dismiss this case. We also deny as moot the Bureau's Motion in Limine, and Citizens's Renewed Motion for Summary Judgment.

DATE: April 18, 2023

_____
JUSTIN R. WALKER
United States Circuit Judge

_____
FLORENCE Y. PAN
United States Circuit Judge

_____
CARL J. NICHOLS
United States District Judge